IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal Action No. 7:11-cr-00029 |
| v. | ) |
| | ) |
| SHAHEEM SHABREE CARLOS, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

**MEMORANDUM OPINION**

On May 1, 2019, defendant Shaheem Shabree Carlos filed a motion to vacate his conviction and sentence for possession of a firearm in furtherance of a drug trafficking crime pursuant to 28 U.S.C. § 2255. ECF No. 269. The government filed a motion to dismiss Carlos' petition on August 2, 2019, ECF No. 279, to which Carlos responded on November 18, 2019. For the reasons stated below, the court will **GRANT** the government's motion and **DISMISS** Carlos' petition.

**I. BACKGROUND**

In March 2011, law enforcement arranged for a confidential informant to make multiple controlled purchases of heroin from an individual at an address in Vinton, Virginia.[1] Several officers, including Detective A. S. Ashby of the Roanoke City Police Department and Officer Valley, a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, and Firearms (ATF), conducted surveillance of these controlled buys and of the residence. ECF No. 269 at 4.

---

[1] Officers' reports indicate that the residence belonged to Carlos.

On April 5, 2011, TFO Valley witnessed several cars come and go from the residence. Law enforcement officers stopped four of those vehicles and found heroin in each of them. One of the drivers admitted to purchasing the heroin from an individual at the residence. Based on this information, Detective Ashby obtained a search warrant for the residence and any person found inside. Id.; Incident Rep't, ECF No. 279-3 at 4.

Upon executing the search warrant, officers found Carlos and two other individuals inside the house. Carlos had "a large sum of currency and a bundle of heroin" in his pocket. Incident Rep't, ECF No. 279-3 at 4. Officers also found substantial amounts of cash and heroin and a .40 caliber semi-automatic pistol. Id. at 4-5. TFO Craig Frye participated in the search of the residence and questioned Carlos with Detective Ashby. Id. at 4-7.

According to the Incident Report prepared by Ashby, he took Carlos upstairs and read him his Miranda rights.[2] Carlos said he had been living at the house for approximately three weeks, identified his bedroom, and told officers that the gun and all the drugs in the house were his. Id. at 5. He estimated that he had approximately twenty bricks of heroin in his room and two bricks in the kitchen cabinet. Carlos told Ashby that he purchased the gun for protection after he was involved in a fight at a local bar the year before. Id. Officer Frye then asked Carlos if he had the gun for protection because he had so much heroin and was afraid of getting robbed. Ashby stated in the report, "To clarify, Detective Fry (sic) asked [Carlos] if he had the gun for protection because he had so much drugs and was afraid of getting robbed and [Carlos] said that was the case." Id.

---

[2] Miranda v. Arizona, 384 U.S. 486 (1966).

The government filed a criminal complaint against Carlos and on May 26, 2011, Carlos was charged in a superseding indictment with possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Two); conspiracy to distribute and possess with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846 (Count Three); and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Thirteen). ECF No. 21 at 1-2, 5.

On January 4, 2012, Carlos entered into a plea agreement in which he agreed to plead guilty to Counts Two and Three of the superseding indictment. Plea Agreement, ECF No. 115-1 at 1-2. The remaining counts would be dismissed at sentencing. Id. at 2. He acknowledged that he would be held responsible for more than 100 but less than 400 grams of heroin and also acknowledged that he might be treated as a career offender under U.S.S.G. § 4B1.1. Id. at 3-4. He pled guilty the same day. ECF Nos. 113, 114.

Based on the drug weight to which Carlos stipulated, his criminal history category, his acceptance of responsibility, the 60-month consecutive sentence required for the firearm charge, and his status as a career offender, the presentence investigation report (PSR) found that his sentencing guideline range was 262 to 327 months. PSR, ECF No. 148 at 15-16. The government filed a motion for substantial assistance, ECF No. 143, which the court granted. On May 30, 2012, the court imposed a sentence of 154 months—94 months and 60 months on the conspiracy and firearm charges, respectively. ECF No. 146.

Carlos' § 2255 motion is based on the participation of Officer Craig Frye in the investigation and prosecution of his case. In April 2018, nearly six years after Carlos was sentenced, the government filed a motion seeking disclosure of grand jury materials and potential impeachment materials regarding Officer Frye. The court granted the motion on May 16, 2018. ECF No. 250. Carlos' motion recounts much of the information disclosed about Officer Frye, as does the government's motion to dismiss. The complaints about Officer Frye included concerns over not following proper procedures and protocols for handling informants and drug information, making disrespectful and offensive comments about women and minority groups, making false statements in court proceedings, and not reporting expunged arrest and charge information. Based on this claimed misconduct, a Roanoke County Assistant Commonwealth's Attorney decided not to sponsor Frye's testimony in any further cases unless the testimony was corroborated by other evidence. Also, the United States Attorney determined that Frye would no longer be permitted to testify as a government witness. None of the undisclosed claimed misconduct was related to Carlos' case.

Given the undisclosed claims of misconduct about Officer Frye, Carlos argues that he should be allowed to withdraw his plea of guilty to the firearm charge under 18 U.S.C. § 924(c). He claims that Frye played a critical role in securing that charge against him and asserts that he would not have pled guilty had he known about the information bearing on Officer Frye's credibility. Carlos asserts that he is entitled to an evidentiary hearing to determine whether Officer Frye's involvement in his case was material to his decision to plead guilty.

## II. DISCUSSION

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir.) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

**B. Standard of Review**

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, at *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v.

Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

**C. Guilty Plea**

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Thus, to withdraw a guilty plea as involuntary, a defendant must show "(1) 'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea' and (2) 'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" United States v. Fisher, 711 F.3d 460, 465 (4th Cir. 2013) (quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006)).

**(1) Impermissible Conduct**

Carlos has not provided any link between Frye's claimed undisclosed misconduct and the firearm charge to which Carlos pled guilty. Without doing so, he cannot show that he is entitled to relief. See, e.g., Lewis, 2015 WL 2401514 at *8-9 (denying defendant's motion where an officer's falsification of an affidavit in a different case lacked any connection to the defendant's case).

In United States v. Robinson, 627 F.3d 941, 949 (4th Cir. 2010), a defendant was tried and later discovered that officers who testified in his trial had engaged in misconduct in other trials. The defendant argued that he was entitled to a new trial but the court denied relief, reasoning that "the officers' misconduct, while serious, did not relate to Robinson's case or to the truth-finding function of the criminal proceeding. We thus reiterate our reluctance to order retrials because of subsequently discovered impeachment evidence." See also Runyon v. United States, 228 F.Supp.3d 569, 590-592 (E.D. Va. Jan. 19, 2017), appeal filed No. 17-5 (4th Cir. Aug. 21, 2017) (finding petitioner failed to state a claim for ineffective assistance of counsel when he alleged that his attorney hired an investigator who later was found to have engaged in a bribery scheme because petitioner could only theorize that the investigator may have filed a false report or taken a bribe, but could show no evidence of dishonesty in his own case); and Basham v. United States, 109 F.Supp.3d 753, 863-864 (D.S.C. 2013) (finding that newly discovered evidence that showed that sheriff who testified against defendant was later convicted of corruption and obstruction of justice did not serve as basis for new trial where sheriff was one of eighty-nine witnesses who testified against defendant, his testimony was not critical to the prosecution, and the other evidence against the defendant was overwhelming).

In Carlos' case, he argues that because Frye gave false answers to <u>Giglio</u> questions prior to his deception being discovered in 2017, he "[s]urely was asked the same <u>Giglio</u> questions before April 2017 and presumably gave the same false answers—something discovery in this case should reveal." ECF No. 269 at 13. However, this assertion is mere speculation and insufficient to state a claim for relief under § 2255. See <u>Smith v. United States</u>, No. 5:15-CR-51-BR, No. 5:18-CV-499-BR, 2020 WL 1865852, *1 (E.D.N.C. 2020) (citing <u>Houck v. Substituted Tr. Servs., Inc.</u>, 791 F.3d 473, 484 (4th Cir. 2015)) (noting that to survive a motion to dismiss, petitioner must raise a right to relief above the speculative level); and <u>Uzenski v. United States</u>, No. 4:02-CR-26-H, 2008 WL 11422585 (E.D.N.C. 2008) (dismissing § 2255 claim as speculative after noting that "[a]lthough petitioner argues that the evidence may have been tampered with, there is no indication that any tampering actually occurred.")

Addressing his own case specifically, Carlos asserts that Officer Frye took three actions that undermined his ability to enter a knowing and intelligent plea. First, Carlos points to a discrepancy between Detective Ashby's report, which states that Frye executed the search warrant, and Frye's report indicating he arrived after the search had already begun. Second, while Frye's report indicates that Ashby advised Carlos of his <u>Miranda</u> rights, Frye allegedly "never answered the question" of whether Carlos received his <u>Miranda</u> rights when testifying to the grand jury. Third, Frye reportedly testified to the grand jury that Carlos "claimed that the firearm was his. He bought it for protection. . . . [H]e had apparently had an altercation at a local nightspot, he got in a fight. And then when I asked if he was protecting his dope trade, he – basically he said, yes. That's the reason I have it." Carlos suggests that because his answer

8

was a "passive acquiescence" to the clarifying question, the inference could be made that he owned the gun for non-drug-related reasons.

None of Frye's actions in this case involve "impermissible conduct" as contemplated by Fisher. In that case, an officer gave false testimony in support of a search warrant. During the ensuing search, officers discovered the evidence that formed the basis of the charge against the defendant. The district court acknowledged that if the defendant had known of the officer's false testimony and had challenged the search, "there likely would have been no prosecution at all." Fisher, 711 F.3d at 467. The court described the officer's conduct as "gross police misconduct [which] goes to the heart of the prosecution's case." Id. at 466.

In Carlos' case, his allegations of misconduct by Frye are not sufficiently serious to warrant setting aside his guilty plea. Frye did not make "unfulfilled or unfulfillable promises" to induce a guilty plea. Fisher, 711 F.3d at 465 (quoting Brady, 397 U.S. at 755). Nor did he make plain and inexcusable misrepresentations not anchored to any permissible litigation strategy. Id. (citing Ferrara, 456 F.3d at 293). Nor did he threaten, promise to discontinue improper harassment, misrepresent the circumstances, or bribe Carlos to induce his plea. See Brady, 397 U.S. at 755. Frye's actions with respect to Carlos' case simply did not rise to the level of "egregious," "extraordinary," or "highly uncommon" misconduct that goes "to the heart of the prosecution's case." Fisher, 711 F.3d at 466.

Carlos first argues that there is a discrepancy between Detective Ashby's report, which states that Frye executed the search warrant, and Frye's report indicating he arrived after the search had already begun. Assuming there is a discrepancy, it does not rise to the level of

extreme conduct contemplated by Fisher or the cases cited therein. Moreover, it is unclear how the discrepancy induced Carlos to plead guilty.

Carlos next argues that while Frye's report indicates that Ashby advised Carlos of his Miranda rights, when Frye was testifying to the grand jury, he "never answered the question" of whether Carlos received his Miranda rights. Nevertheless, Detective Ashby had Carlos sign a waiver of his rights, ECF No. 279-4 and stated in his report that he "read him his Miranda Rights." Incident Rep't, ECF No. 279-3 at 5. Carlos does not assert that he was not properly advised of his Miranda rights and Frye's failure to answer the grand jury's question was not an egregious act in this context by any measure.

Finally, Carlos asserts that there are discrepancies in reports of reasons that he gave for possessing the gun. He argues that he would not have pled guilty to the gun charge and would have insisted on his right to trial if he had known that Frye had a history of noncompliant investigative practices causing his superiors to question whether his investigations were tainted; if he had known that Frye lied in response to Giglio questions; and if he had known that Frye had credibility issues. He asserts that if he had known of these issues, he would have challenged the government's proof, and in particular Frye's statements that he claims were "shaded differently" than Ashby's statements. ECF No. 269 at 13.

Carlos sums up his argument as follows:

> As things stood, Mr. Carlos faced a situation where a law enforcement officer with no disclosed credibility issues testified before a grand jury that he admitted having the gun to protect "his dope trade." Mr. Carlos did not perceive the differences in Frye's reports and Ashby's to be significant, because he assumed a trial would be the word of two unblemished police officers against him. If he had known of Frye's history, he would have elected to take the case to trial and show that Frye had twisted his words to make it appear that the gun he bought

10

> for protection of his person from assault or robbery of money was connected with his drug activities.

ECF No. 269 at 14.

However, the testimony that Frye gave to the grand jury was not inconsistent with Ashby's incident report. Ashby's report states the following with regard to the gun:

> I asked [Carlos] about the gun we found in the closet and he told me that it was his as well. I asked him where he got it and he told me that he bought it for his protection after he got in a fight at JB's around July of last year. He says he bought it [for] $200 from a guy he doesn't know. To clarify, Detective Fry (sic) asked [Carlos] if he had the gun for protection because he had so much drugs and was afraid of getting robbed and [Carlos] said that was the case.

Incident Rep't, ECF No. 279-3 at 5. According to Carlos, Frye testified to the grand jury that "[Carlos] claimed that the firearm was his. He bought it for protection." ECF No. 269 (quoting from Grand Jury Tr., April 14, 2011, at 5). When asked what Carlos was protecting himself from, Frye answered, "Well, he had apparently had an altercation at a local nightspot, he got in a fight. And then when I asked if he was protecting his dope trade, he – basically he said, yes. That's the reason I have it." Id., (quoting Grand Jury Tr. at 5). Carlos asserts that in the incident report that Frye prepared, Frye stated that Carlos had purchased the gun "for protection due to an altercation at a local bar and he was afraid of getting robbed due to all the drugs and money in the residence." ECF No. 269 at 5 (apparently quoting from Frye's incident report, although it is not part of the record).

Carlos asserts that different inferences can be drawn from the three accounts of his reasons for owning the gun. He claims that his initial response to the gun-ownership question was that he bought the gun for protection after a fight and that the connection between the gun and drugs was obtained as a clarification. Because Carlos had also stated that his mother

11

had given him money, he contends that a reasonable inference from Ashby's report is that Carlos agreed that he had a lot of drugs and agreed that that he was afraid of getting robbed because he had gotten money from his mother, which is not necessarily the same as having the gun to protect the drugs. But all the grand jury heard from Frye was that Carlos "basically" said "yes" when asked "if he was protecting the dope trade," which he asserts is different from Ashby's description of events.

The court does not find that these reports of Carlos' interview are inconsistent with one another. Frye and Ashby both reported that when asked why he owned a gun, Carlos replied that it was for protection. Both accounts note that when asked whether he felt he needed protection because he was involved in the drug trade, he agreed.

In addition, even if Frye misrepresented what Carlos said when Frye was testifying to the grand jury, it was not "a plain and inexcusable misrepresentation[] not anchored to any permissible litigation strategy." Ferrara, 456 F.3d at 293. Rather, as described by Carlos, it was a "differently shaded" interpretation of the statement Carlos made while he was being interviewed. Accordingly, the court finds that Frye did not engage in impermissible conduct related to is investigation of Carlos or his presentation of evidence to the grand jury.

**(2) Materiality**

Even if Carlos could identify impermissible conduct that satisfied the first prong of Fisher, the court finds that Frye's conduct was not material to Carlos' decision to plead guilty. To meet the materiality prong, a defendant must show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." Fisher, 711 F.3d at 467 (quoting Ferrara, 456 F.3d at 294). But a defendant may not satisfy this

prong merely by stating that his decision would have been different. Rather, courts are to employ an "objective approach to determining reasonable probability." Id.

A defendant's decision to plead guilty is often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Id. at 466. Disregarding Frye's testimony before the grand jury and his incident report, Ashby's report recounted Carlos' admissions that all of the heroin and the firearm were his. Also, Carlos' original non-drug-related explanation for possessing the gun likely would not have outweighed the evidence against him. In addition to Ashby's report that Carlos stated he purchased the gun in part because of his drug trafficking, Carlos was a convicted felon who possessed a firearm and stored it in the same bedroom where officers found a substantial amount of cash and drugs. See United States v. Moore, 769 F.3d 264, 270 (4th Cir. 2014) (upholding a firearm conviction where the defendant was a felon who kept his firearm in close proximity to a "great deal of" cash and drugs); and United States v. Lomax, 293 F.3d 701, 705–06 (4th Cir. 2002) (affirming a conviction where the defendant, a felon, was carrying a firearm while he had drugs in his pocket in a circumstance indicating the defendant was involved in drug trafficking). Had Carlos successfully challenged Frye's involvement in the investigation, Carlos nonetheless faced a significant amount of evidence on his firearm charge.

In addition, had Carlos proceeded to trial and been convicted, he faced a sentence of 360 months to life. PSR, ECF No. 148 at ¶ 83. After considering the evidence against him and the possibility for a sentence reduction, Carlos pled guilty and received a sentence of less than half of what he faced. It is highly improbable that Carlos would have gone to trial on his

firearm charge knowing that it would jeopardize his ability to receive sentence reductions related to the plea. For these reasons, the court finds that it is not reasonably probable that Carlos would have gone to trial on his firearm charge even if he had been aware of the impeachable conduct of Officer Frye.

Carlos argues that he is entitled to a hearing on the issue of materiality because there is a fact question regarding the strength of the government's evidence on the other charges and the countervailing weight of any possible defenses Carlos could have sought to raise against those charges. However, the only charge Carlos challenges in this motion is the § 924(c) firearm charge. As discussed above, construing the evidence in Carlos' favor and disregarding Frye's testimony to the grand jury and his incident report, Ashby reported that Carlos stated that the heroin and the firearm belonged to him and courts have upheld firearm convictions under similar circumstances. Thus, Carlos has failed to allege facts that point to a necessity for an evidentiary hearing. See 28 U.S.C. § 2255(b) (providing that a court need not grant a hearing on a § 2255 motion if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

## III. CONCLUSION

Finding that the allegations in Carlos' complaint, taken in the light most favorable to him, do not warrant withdrawal of his guilty plea, the court **GRANTS** the government's motion to dismiss, ECF No. 279, and **DISMISSES** Carlos's § 2255 petition, ECF No. 269. Because Carlos has failed to make a substantial showing of the denial of a constitutional right

as required by 28 U.S.C. § 2253(c) and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate order will be entered.

Entered: June 30, 2020

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge